IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANA GABRIELA GARCIA DIAZ, <br> a.k.a. ANTON GARCIA DIAZ, <br><br> Petitioner, <br><br> vs. <br><br> DAMON ACUFF, in his capacity as <br> Warden, Pulaski County Detention Center, <br><br> ROBERT GUADIAN, in his official capacity <br> as Acting Field Office Director, Chicago <br> Field Office, U.S. Immigration and Customs <br> Enforcement, <br><br> MATTHEW T. ALBENCE, in his official <br> capacity as Deputy Director and Senior <br> Official Performing the Duties of Director of <br> U.S. Immigration and Customs Enforcement, <br><br> and <br> CHAD WOLF, in his official capacity as <br> Acting Secretary of the U.S. Department of <br> Homeland Security, <br><br> Respondents. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 20-cv-352-SMY <br> ) <br> ) <br> ) <br> ) |

# **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Petitioner Ana Gabriela Garcia Diaz, a transgender man also known as Anton Garcia Diaz, is currently in immigration detention at the Pulaski County Detention Center in Ullin, Illinois ("Pulaski"). He filed an "Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Injunctive Relief" on April 14, 2020, claiming his continued detention in the face of the facility's failure to provide basic protections from COVID-19, failure to provide him with adequate medical care, and his prolonged detention,

1

violates his Fifth Amendment due process rights (Doc. 1).

The Court conducted a telephonic hearing on April 17, 2020 regarding Garcia Diaz' request for a preliminary injunction ordering his immediate release, during which it considered the parties' briefs, attached sworn declarations, and the arguments of counsel (*See* Doc.13, Transcript of Hearing).[1]  Although given the opportunity, neither party presented witness testimony. Respondent subsequently supplemented the record by updating information that was provided orally during the hearing (Docs. 12 and 15).

For the following reasons, and those more fully stated on the record during the hearing, Garcia Diaz's request for preliminary injunctive relief is **DENIED.**

## Background

Garcia Diaz entered the United States without inspection in 2008 and 2009 and was ordered removed from the country on May 10, 2009.  He unsuccessfully sought asylum and was deported on August 5, 2009.  At some point, he re-entered the U.S. and was subsequently taken into custody by Immigration and Customs Enforcement (ICE) on September 26, 2019, after an arrest for resisting or obstructing an officer.  Garcia Diaz was processed as a "reinstatement of removal" (Doc. 9, p. 3).  He has applied for withholding of removal and protection under the Convention Against Torture (CAT) on account of his LGBTQ identification and due to his fear of serious harm or death if he were to return to Honduras.  An immigration judge denied his request for relief on February 10, 2020.  Garcia Diaz appealed the judge's ruling on March 4, 2020 and is awaiting a briefing schedule for his appeal.[2]  (Doc. 1, pp. 8, 51; Doc. 1-1; Doc. 9, p. 4).

---

[1] An interpreter participated in the call and provided Garcia Diaz with a brief summary following the proceedings, but pursuant to the request of Garcia Diaz and his counsel, simultaneous translation of the full proceeding was not provided.
[2] ICE denied his request for parole on April 3, 2020.  (Doc. 9, pp. 4-5).

2

Garcia Diaz arrived at Pulaski on March 13, 2020 and was placed in the female housing unit based on his self-identification at the time. He was placed in solitary confinement on April 5, 2020 for alleged conduct charges.[3] He asserts in his Petition that ICE and Pulaski are unprepared and incapable of taking necessary precautions to protect detainees against a life-threatening illness. Specifically, he alleges that despite the clear danger posed by COVID-19, ICE and Pulaski are not instructing him and the other detainees how to prevent transmission; they are not taking adequate measures to allow for social distancing; they are not providing access to doctors or testing; they are not providing proper nutrition or prophylactic equipment such as masks, gloves, hand sanitizer, or sufficient cleaning supplies; and they are not regularly sanitizing common areas and objects.

Garcia Diaz further alleges that he has pre-existing medical conditions, including a history of arthritis, allergies, and depression (Doc. 1, p. 4) and reports having experienced headaches, a sore throat, hives on his face, difficulty breathing, and one episode of coughing while housed at Pulaski. (Doc. 1, p. 3).

## Discussion

To obtain injunctive relief, Garcia Diaz must show that he has a reasonable likelihood of success on the merits of the Petition, that he will suffer irreparable harm in the absence of an injunction, and that he has no adequate remedy at law. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); FED. R. CIV. P. 65. During the hearing, Garcia Diaz' counsel represented that he continues to suffer from headaches, sneezing, and breathing difficulties related to his allergies (versus respiratory shortness of breath). (Doc. 13, pp. 20-21). He still has hives, but they are less severe than when his Petition was filed. He is not currently experiencing a sore

---

[3] At the time of the hearing, it was expected that he would be returned to the female general housing unit on April 19, 2020.

throat, cough, or elevated temperature.[4] He alleges that since his placement at Pulaski, he has submitted at least 5 requests to be seen by a doctor but has not seen one, and that while he is in a solitary cell, he has no direct access to the sick call drop box and must hand his request to a guard.[5]

Along with their Response to Garcia Diaz' request for injunctive relief, Respondents submitted the Declaration of Damon Acuff, the Warden of the Pulaski County Detention Center, which was supplemented following the hearing (Docs. 9-2 and 12). According to Acuff, no new ICE detainees have entered the facility since April 2, 2020. Pamphlets providing information about COVID-19 in English and Spanish are located in every housing unit. Six detainees have tested positive for COVID-19 after having been placed in medical isolation for suspected symptoms. Six staff members have tested positive for COVID-19, and those individuals are no longer reporting to work. In response to the pandemic, additional safety protocols have been implemented at the facility pursuant to guidelines from the Illinois Department of Public Health (IDPH), including medical isolation and testing of any detainee who shows signs or symptoms of an illness, keeping detainees in each unit of the facility separate from one another, providing an N-95 mask to every detainee, requiring staff to wear a mask while in a housing unit, daily temperature checks of staff and detainees, temperature checks of anyone entering the facility, and daily distribution by cart of hygiene products to detainees. Pulaski is making its own hand sanitizer pursuant to IDPH guidance. The facility has 2 negative pressure rooms in the medical unit for isolation.[6] Detainees who are currently in medical isolation are housed alone and will not be

---

[4] Detainees' temperatures are checked each day around 9:00 p.m., and as of that time the night before the hearing, Garcia Diaz had a normal temperature.

[5] According to Respondents, each incoming detainee undergoes a medical screening and evaluation upon arrival. Additionally, Garcia Diaz has received dental and mental health treatment while at Pulaski. Written sick call requests are picked up from the drop box three times daily. (Doc. 9, pp. 5, 8). To date, neither party has obtained copies of Garcia Diaz' medical records for the period of his detention, and therefore, the Court has been unable to review them.

[6] Subsequent to the hearing, Respondents reported that another 12-cell unit has been converted into a medical isolation center, so that 20 cells with bunk beds are now available for this purpose. (Doc. 15).

released into general population until clearance is given from the IDPH. An additional 200 COVID-19 tests were obtained on April 17, 2020.

Here, the parties' written submissions present a factual dispute as to whether the conditions of confinement at Pulaski place Garcia Diaz and others at a heightened risk of infection because of insufficient precautions taken by Respondents. In reviewing the sworn declarations provided by the parties, the Court finds Warden Acuff's detailed description of the precautions that have been implemented at Pulaski under the guidance of the IDPH to be credible, and concludes that ICE and Pulaski are taking all reasonable precautions possible at this time. Moreover, while Garcia Diaz has several medical conditions (arthritis, allergies, depression, and stress), none of them place him at higher risk for either contracting the virus or suffering serious complications if he becomes ill, according to Center for Disease Control (CDC) guidelines.

The Court is mindful of the serious threat of infection and related complications associated with the COVID-19 global pandemic, as well as the particular challenges faced in detention centers and similar environments. That said, at this juncture, Garcia Diaz has not demonstrated a reasonable likelihood of success on the merits for his claim for unconstitutional conditions of confinement or, based on his pre-existing and current medical conditions, a likelihood that he will suffer irreparable harm in the absence of an injunction ordering his immediate release.

## Conclusion

For the foregoing reasons, Petitioner Ana Gabriela, a.k.a. Anton, Garcia Diaz' request for emergency injunctive relief in the form of an order for immediate release from detention is denied; this matter shall proceed for consideration of the merits of the claims presented in the Petition. Accordingly, Respondents shall have **twenty-one (21) days** (**up to and including May 12, 2020**)

5

to submit their formal response to the Petition. Petitioner may file a reply within **fourteen (14) days** after the response is filed.

Petitioner is **ADVISED** of his continuing obligation to keep the Clerk (and Respondents) informed of any change in his whereabouts during the pendency of this action.  This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.  Failure to provide such notice may result in dismissal of this action.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  April 21, 2020**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**