IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANA GABRIELA GARCIA DIAZ, )<br>a.k.a. ANTON GARCIA DIAZ, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>DAMON ACUFF, in his capacity as )<br>Warden, Pulaski County Detention Center, )<br>)<br>ROBERT GUADIAN, in his official capacity )<br>as Acting Field Office Director, Chicago )<br>Field Office, U.S. Immigration and Customs )<br>Enforcement, )<br>)<br>MATTHEW T. ALBENCE, in his official )<br>capacity as Deputy Director and Senior )<br>Official Performing the Duties of Director of )<br>U.S. Immigration and Customs Enforcement, )<br>)<br>and )<br>CHAD WOLF, in his official capacity as )<br>Acting Secretary of the U.S. Department of )<br>Homeland Security, )<br>)<br>Respondents. ) | Case No. 20-cv-352-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Petitioner Ana Gabriela Garcia Diaz, a transgender man also known as Anton Garcia Diaz, is currently in immigration detention at the Pulaski County Detention Center in Ullin, Illinois ("Pulaski"). He filed an "Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Complaint for Injunctive Relief" on April 14, 2020, raising three claims: (1) his continued detention under conditions at Pulaski that place him at risk of infection with COVID-19 and severe illness or death violates his Fifth Amendment right to substantive due

1

process; (2) Respondents' failure to provide adequate medical care in order to protect him from infection with COVID-19 violates his Fifth Amendment right to substantive due process; and (3) his detention – currently 8 months in duration – has become unconstitutionally prolonged and violates his Fifth Amendment procedural due process rights (Doc. 1, pp. 48-52).  On April 21, 2020, the Court denied Garcia Diaz' request for a preliminary injunction ordering his immediate release and set a briefing schedule on the remaining claims.  (Doc. 17).

Based upon the Court's review and consideration of the parties' briefs and supplementary documentation, and for the following reasons, Garcia Diaz's request for habeas corpus relief is **DENIED**.

## Background

Garcia Diaz is a 31-year-old native of Honduras.  He entered the United States without inspection in 2008 and was removed on April 7, 2008 pursuant to 8 U.S.C. § 1225(b)(1).  (Doc. 9-1, ¶ 6; Doc. 21, p. 4).  He subsequently returned to the U.S. without inspection, and immigration authorities took steps to deport him by reinstating the April 7, 2008 expedited-removal order.  *Id.* Garcia Diaz claimed he feared returning to Honduras, but an asylum officer concluded he did not have a reasonable fear of persecution or torture.  That determination was affirmed by an Immigration Judge ("IJ") and he was removed from the U.S. for a second time on August 5, 2009.

Garcia Diaz re-entered the U.S. again[1] and on September 26, 2019, was taken into custody by Immigration and Customs Enforcement ("ICE") after an arrest for resisting or obstructing an officer.[2]  His case was processed as a "reinstatement of removal." (Doc. 21 p. 4).  He has applied

---

[1] The date when Garcia Diaz re-entered the U.S. is unknown, but he was present on January 15, 2016, when he was convicted in Lafayette County, Wisconsin, of a civil violation for disorderly conduct. (Doc. 9-1, ¶ 13; Doc. 21, p. 4). He was convicted of resisting or obstructing an officer on December 21, 2018 in Lafayette County, Wisconsin and a civil forfeiture fine was imposed. *Id.*
[2] The record does not indicate that any criminal charges or conviction ensued following this arrest.

2

for withholding of removal and protection under the Convention Against Torture ("CAT") on account of his LGBTQ identification and his fear of serious harm or death if he were to return to Honduras. An IJ found Garcia Diaz' account of his fears to be credible and "sufficiently corroborated," but denied his request for relief on February 10, 2020. (Doc. 21, p. 5; Doc. 26-3, pp. 3, 8). Garcia Diaz appealed the judge's ruling on March 4, 2020 and the matter is now pending before the Board of Immigration Appeals ("BIA"). (Doc. 1, pp. 8, 51; Doc. 1-1; Doc. 21, p. 5). The BIA has ordered the parties to submit their briefs by June 1, 2020. (Doc. 26-2).

ICE's Enforcement and Removal Office ("ERO") reviewed Garcia Diaz' custody status on December 23, 2019 and determined he should remain in detention. (Doc. 21, p. 5; Doc. 21-1, p. 3). ERO conducted a follow-up custody review, including a May 4, 2020 personal interview with Garcia Diaz. The agency continued his detention on May 5, 2020.[3]

Garcia Diaz arrived at Pulaski on March 13, 2020 and was placed in the female housing unit based on his self-identification at the time. Pulaski has one all-female housing unit (D-Pod) consisting of 12 two-person cells, each with its own sink and toilet. (Doc. 21-2, p. 2). Since April 5, 2020, Garcia Diaz has been housed alone in a cell in D-Pod. (Doc. 9, p. 9; Doc. 21, p. 7; Doc. 21-1, p. 4). As of May 22, 2020, five detainees remained in the female housing unit. (Doc. 26-1, p. 2).

During Garcia Diaz' detention at Pulaski, a total of 29 ICE detainees (all male) have tested positive for COVID-19. Ten of these individuals have active cases and remain in medical isolation and the others have recovered. (Doc. 26-1, pp. 1-2). No female detainees have tested positive for COVID-19 or have shown any symptoms warranting testing. *Id.* Pulaski has the capacity to house more than 200 ICE detainees but currently holds only 73. No new ICE detainees have entered the

---

[3] According to Respondent, any future "Post-Order Custody Reviews" for Garcia Diaz will be conducted by ICE's Headquarters Post-Order Detention Unit. (Doc. 21, p. 6; Doc. 21-1, pp. 2-3).

facility since April 2, 2020.  Two-thirds of Pulaski staff members have been tested for COVID-19 and 15 tested positive; all of whom have recovered.  No staff were positive for the virus as of May 22, 2020.  (Doc. 21-2, p. 6; Doc. 26-1, p. 2).

Garcia Diaz has been diagnosed with depression for which he regularly takes prescription medication.  (Doc. 22).  He also takes medication for allergies.  *Id.* He asserts that his medical conditions place him at elevated risk for complications should he become infected with COVID-19.  (Doc. 1, pp. 3-4).

## Discussion

Respondents maintain that Garcia Diaz is subject to an "administratively final removal order" and is thus detained pursuant to 8 U.S.C. § 1231, implemented at 8 C.F.R. § 241.1 *et seq.* (Doc. 21, p. 1-4).  They contend his detention is mandatory while removal is pending, but that a detainee who is kept in custody beyond the usual 90-day removal period may seek release if he can show that "there is no significant likelihood of removal" to his home country or a third country "in the reasonably foreseeable future."  8 C.F.R. § 241.13(a); (Doc. 21, p. 2).  They acknowledge that withholding of removal may be granted under 8 U.S.C. § 1231(b)(3) and protection may be available under the CAT.  *Id.*

Garcia Diaz argues that his reinstated order of removal is not a "final administrative order" because his request for withholding of removal is still being adjudicated, and that 8 U.S.C. § 1231 is not the statute governing his detention.  (Doc. 23, p. 1).  He notes a Circuit split as to whether 8 U.S.C. § 1226(a) (under which detention is discretionary, not mandatory) or 8 U.S.C. § 1231 is the source of detention authority for a person whose case is in this procedural posture, and that the Seventh Circuit has not addressed the question.  (Doc. 1, p. 39; Doc. 23, pp. 1-2).  He further

argues that this Court can address his allegedly unconstitutionally prolonged detention without resolving that split.  The Court agrees.

Courts may consider individualized challenges to the constitutionality of immigration detention.  *See Jennings v. Rodriguez*, 138 S. Ct. 830, 851-52 (2018); *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."); *Preiser v. Rodriguez*, 411 U.S. 475, 484, 500 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Vargas v. Beth*, 378 F. Supp. 3d 716, 722-23 (E.D. Wisc. 2019) (federal courts have jurisdiction over due process challenges to detention) (collecting cases).  And, it has long been established that detainees are entitled to procedural due process in relation to restraints on their liberty.  *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690.  At the same time, the government has a legitimate interest in protecting the community from any danger posed by a detainee and in ensuring his or her appearance at immigration proceedings.  As such, when considering a habeas petition challenging detention, the Court must determine whether the particular detention at issue is reasonably related to one of these governmental interests – the government must justify continued civil confinement with "clear and convincing evidence" that the detainee is a flight risk or poses a danger to the community.  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).  *See also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

While the ordinarily "brief" detention associated with pending removal proceedings is constitutionally permissible (*see Demore*, 538 U.S. at 528-31, observing that detention under § 1226(c) lasts for less than 90 days "in the majority of cases"), detention that becomes indefinite raises "serious constitutional concerns."  *Zadvydas*, 533 U.S. at 682 (detention longer than 6 months during attempts to execute final order of removal was presumptively unreasonable).  In

assessing the constitutionality of continued immigration detention, courts consider a number of relevant factors, including: the length of detention to date; whether it exceeds the time the detainee was in prison for the crime that prompted removal proceedings; the likely duration of future detention; the conditions of detention; whether civil detention is meaningfully different from punitive detention; whether delays in the removal proceedings were caused by the detainee or the government; and the likelihood that removal proceedings will be successful in light of any colorable defenses to removal. *See Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wisc. 2019); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn. 2019). The Court finds this analysis to be applicable, regardless of whether the source of detention is 8 U.S.C. § 1226(a) or 8 U.S.C. § 1231.

Here, Respondents argue, and have produced clear and convincing evidence to support Garcia Diaz' continued detention – that he poses a flight risk.[4] Garcia Diaz' history of three unauthorized entries to the U.S. evidences his propensity for noncompliance with immigration requirements. That history also leads to a reasonable conclusion of a risk that he will fail to appear for hearings or for removal (if it is ultimately ordered) if he were released from detention.

As to the conditions of Garcia Diaz' confinement at Pulaski, while the Court recognizes the risk of exposure to COVID-19 in that facility, Garcia Diaz does not suffer from any medical condition that makes him uniquely vulnerable to infection or to a heightened risk of complications according to Center for Disease Control (CDC) guidelines. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Further, he is currently housed alone, in a separate cell, in the all-female housing unit which currently houses only 4 other detainees. No female detainees have tested positive for COVID-19,

---

[4] Respondents do not contend that Garcia Diaz would pose a danger to the community if released, and his lack of criminal convictions would undermine any such argument.

and detainees in his housing unit do not mix with detainees in other units. Hand sanitizer, soap, and masks have been provided to all detainees, and those in the female housing unit are able to maintain social distancing with their housing arrangement. Garcia Diaz has received regular and timely medical and mental health care while detained at Pulaski, and testing and medical isolation units are available for detainees who show symptoms indicative of possible COVID-19 infection. In sum, Garcia Diaz has not established that the conditions of his confinement amount to punishment so as to violate his due process rights as alleged in his Petition.

Regarding Garcia Diaz' claim that the length of his detention has become unconstitutionally prolonged, the Court notes that 8 months does not significantly exceed the presumptive 6-month benchmark referenced in *Zadvydas*. Moreover, while certainly not blameworthy, by exercising his right to appeal, Garcia Diaz has contributed to the length of his detention to some degree. That said, the briefing schedule for his pending appeal before the BIA requires both him and the Government to submit their briefs by June 1, 2020, indicating that his appeal is moving forward and is not currently unreasonably delayed. And while Garcia Diaz may have a colorable claim to avoid removal to Honduras, there is also a possibility that he could be removed to a third country. Thus, he has not shown that there is no significant likelihood of his removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701.

Balancing all the relevant considerations, at this juncture, the Court concludes that Respondents' interest in detaining Garcia Diaz to ensure his availability for further proceedings or for removal outweighs his interest in regaining his liberty.

## Disposition

For the foregoing reasons, Petitioner Ana Gabriela, a.k.a. Anton, Garcia Diaz' request for habeas corpus relief is **DENIED** and this case is **DISMISSED**. The dismissal is without prejudice

to Garcia Diaz filing a future habeas corpus action if the length and/or circumstances of his detention substantially change. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

    **IT IS SO ORDERED.**

    **DATED:  May 28, 2020**

                                   *s/ Staci M. Yandle*
                                   **STACI M. YANDLE**
                                   **United States District Judge**